IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CONCREATE, INC., <br>      Plaintiff, <br> <br>      v. <br> <br> S.B. BALLARD CONSTRUCTION COMPANY, *et al.*, <br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. 2:20cv293 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant and Counterclaim Plaintiff S.B. Ballard Construction Company's Motion to Stay and Compel Arbitration (ECF No. 14) and Defendant Liberty Mutual Insurance Company's Motion to Stay Pending Arbitration (ECF No. 16). The Motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motions.

**I. FACTUAL HISTORY[1]**

Defendant S.B. Ballard Construction Company ("Ballard") entered into a contract ("Contract") with the United States of America, U.S. Army Corps of Engineers, to perform improvements on a project known as 2017-331 Training Support Facility Ft. Lee ("Project"). (Compl., ECF No. 1 ¶ 6.) On or about March 3, 2017, a payment bond was posted for the Project pursuant to the Miller Act, binding Ballard as principal and Defendant Liberty Mutual Insurance

---

[1] For purposes of the instant Motions, the Court will recite the facts as alleged in Plaintiff's Complaint.

1

Company ("Liberty") as surety to make prompt payments to those supplying labor and material to the Project. (*Id.* ¶ 7.) Ballard then entered into a subcontract ("Subcontract") with Plaintiff Concreate, Inc. ("Concreate" or "Plaintiff") in which Concreate agreed to perform part of the work of the Contract. (*Id.* ¶ 8.)

Plaintiff alleges that it furnished labor and materials under its Subcontract with Ballard, but Ballard has "knowingly and willfully refused to pay . . . for labor and materials" in the amount of $315,889.52. (*Id.* ¶¶ 9-10.) Plaintiff further alleges that Ballard represented to the U.S. Army Corps of Engineers that it had paid Plaintiff in full, although Ballard had sent notices to Plaintiff stating that it intended to withhold a portion of Plaintiff's billings to Ballard. (*Id.* ¶¶ 18-19.) Plaintiff alleges that Ballard and Liberty are jointly and severally liable to it for the amount of $315,889.52 under the Miller Act for past billings, current billings, and the additional rental cost of a piece of equipment that was necessary because of Ballard's delay. (*Id.* ¶¶ 27-28.) Plaintiff also alleges that Ballard is obligated to pay it $230,199.64 for damages caused by Ballard's delay and breach of contract. (*Id.* ¶¶ 30-31.)

The Subcontract contains a section labeled "Claims and Disputes" that governs how disputes between the parties of the Subcontract will be handled. (Subcontract Agreement, ECF No. 1-2 at 7.) The parties edited the Subcontract by hand, crossing out some phrases and inserting others. (*Id.*) The Plaintiff believes that this portion of the Subcontract does not requires the parties to arbitrate their disputes, while the Defendants believe this portion of the Subcontract requires the parties to participate in arbitration.

## II. PROCEDURAL HISTORY

Plaintiff filed the Complaint on June 12, 2020, and both Defendants answered on November 9, 2020. (ECF Nos. 1, 8, 10.) This action was originally assigned to United States

District Judge Arenda L. Wright Allen.  Ballard filed a Counterclaim on November 9, 2020, and Plaintiff answered the Counterclaim on November 23, 2020.  (ECF Nos. 11, 18.)  On November 9, 2020, Defendant Ballard filed the instant Motion to Stay and Compel Arbitration, and Defendant Liberty filed the instant Motion to Stay Pending Arbitration.  (ECF Nos. 14, 16.)  Liberty's Memorandum in Support adopted and incorporated by reference S.B. Ballard Construction Company's Memorandum in Support pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.  Both Defendants' Motions became ripe on November 30, 2020.  (ECF Nos. 24, 25.)  This action was reassigned to the undersigned on January 5, 2021.

### III. LEGAL STANDARD

The Miller Act is a federal statute that requires contractors to post surety bonds for federal construction projects.  40 U.S.C. §§ 3131-3134.  "[T]he Miller Act's purpose is to ensure that subcontractors are promptly paid in full for furnishing labor and materials to federal construction projects."  *United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 438 (E.D. Va. 2009) (citing *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217 (1957)).  "Where . . . a subcontractor has not received payment from the general contractor, the Miller Act is designed to provide the subcontractor with a prompt means of recovering payment from the surety for providing labor and materials to the federal project."  *Id.* at 439.  The "essence" of the Miller Act "is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material.  Thus the Act provides a broad but not unlimited protection."  *Carter*, 353 U.S. at 217.  Additionally, Miller Act claims are subject to arbitration clauses.  *See, e.g., United States ex rel. Indus. TurnAround Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 3:09-CV-018, 2010 U.S. Dist. LEXIS 82744, *1-*2 (E.D. Va. Aug. 11, 2010); *Blumenthal-Kahn Elec. Ltd. v. Am. Home Assur. Co.*, 236

F. Supp. 2d 575, 576 (E.D. Va. 2002); *United States for Use of DeLay & Daniels, Inc. v. Am. Emp. Ins. Co. of Mass.*, 290 F. Supp. 139, 140 (D.S.C. 1968).

The Federal Arbitration Act, 9 U.S.C. § 1, et seq., provides a mechanism for judicial enforcement of private agreements to arbitrate disputes. The "purpose [of the Federal Arbitration Act] was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted). The Act allows a party to obtain an order from the United States District Court compelling arbitration pursuant to a prior agreement to arbitrate. 9 U.S.C. § 4. To compel arbitration under the Federal Arbitration Act, a party must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and[,] (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). The Federal Arbitration Act also "provides for stays of proceedings in federal district courts when an issue in the proceedings is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Waffle House, Inc.*, 534 U.S. at 289 (citing 9 U.S.C. §§ 3, 4).

### IV. DISCUSSION

The parties disagree as to whether arbitration can be compelled in this action under the Federal Arbitration Act. As previously stated, in order to compel arbitration, a party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate

> or foreign commerce, and[,] (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Galloway*, 819 F.3d at 84. Defendants have shown that there is a dispute in this action, as Plaintiff claims that Ballard breached the Subcontract, and Defendants claim that Concreate also breached the Subcontract. (Mem. Supp., ECF No. 15 at 6.) Defendants have also demonstrated that the transaction is related to interstate commerce, as this action relates to a construction project on a United States Army base that "involves interstate commerce as the Project included products and equipment shipped to Virginia from out of state."[2] (*Id.*) Additionally, Defendants have shown that Plaintiff is refusing to arbitrate the dispute. (*Id.* at 7.) The question at hand, however, is whether there is a written agreement that includes an arbitration provision that purports to cover the dispute.

The parties agree that there is a written agreement, the Subcontract, that covers their dispute. (Subcontract Agreement; Mem Opp'n, ECF No. 20 at 4.) They disagree, however, as to whether this agreement contains a valid arbitration provision.

The Subcontract contains both printed and handwritten terms, and the parties acknowledge that the handwritten changes are valid. (Mem Opp'n at 2; Reply, ECF No. 24 at 2.) The relevant portion of the Subcontract states:[3]

> 13. CLAIMS AND DISPUTES
>
> . . .
>
> (B) The Subcontractor agrees that at the sole option of SBBCC all other disputes not included in subparagraph (A) above, shall be litigated in the Circuit Court for the City of Norfolk, Virginia; the Circuit Court for the City of Virginia Beach,

---

[2] The Federal Arbitration Act covers "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has held "that the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995). "'[I]nvolving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Id.* at 277. Transactions can involve interstate commerce, "even if the parties did not contemplate an interstate connection." *Id.* at 281.

[3] The portions that are crossed out above were crossed out by hand, and the portions that are in bold were inserted by hand.

> Virginia; or the United States District Court for the Eastern District of Virginia, Norfolk Division unless otherwise required by the General Contract. The parties hereby expressly consent to the jurisdiction and venue of said courts. ~~Subcontractor waives trial by jury. SBBCC, at its sole discretion, may request or withdraw a request for a trial by jury.~~
>
> (C) ~~At the sole discretion of SBBCC,~~ claims included in subparagraphs (A) or (B), above, shall be arbitrated. ~~If SBBCC determines that resolution of any dispute between the Subcontractor and SBBCC shall be made in such manner, litigation pursuant to subparagraph (B), above, shall not be permitted~~. Further, Subcontractor agrees, if requested by SBBCC, to participate in mediation or in any arbitration or other form of alternative dispute resolution procedure between SBBCC, the Owner, or other party that in any way arises out of or relates to the Subcontract Work. If arbitration is the forum ~~chosen by SBBCC in its sole discretion~~ **agreed by all parties**, it shall be conducted in Norfolk, Virginia . . . .

(Subcontract Agreement at 7.)

Plaintiff argues that this section of the Subcontract shows that the parties did not agree to arbitration. (Mem. Opp'n at 1.) Plaintiff asserts that the last sentence should be interpreted as: "[I]f the parties agree to arbitration, then the arbitration shall be conducted under AAA Rules in Norfolk, Virginia." (*Id.* at 5.) By Plaintiff's reading, this last sentence implies that arbitration is only proper if agreed to by all parties. Plaintiff also contends that the Subcontract means that "[i]f there is no agreement, then litigation must take place in Norfolk, Virginia[,] and Plaintiff has the right to request trial by jury." (*Id.*)

Defendants, on the other hand, point to the fact that the Subcontract states that "claims included in subparagraphs (A) and (B) above, *shall* be arbitrated." (Reply at 3 (quoting Subcontract Agreement at 7 (emphasis added)).) Defendants argue that the word "shall" means that something is "mandatory rather than permissive." (*Id.* at 4 (quoting *Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009).) Defendants also assert that Plaintiff's construction ignores the phrase that "[t]he Subcontractor agrees that *at the sole option of SBBCC* all other disputes not included in subparagraph (A) above, shall be litigated. . . ." (*Id.*

6

(quoting Subcontract Agreement at 7 (emphasis added)).) Defendants contend that this means the option to litigate belongs solely to Ballard and that Plaintiff cannot avoid arbitration. (*Id.*)

A plain reading of the four corners of the Subcontract favors the Defendants' interpretation that it contains a mandatory arbitration clause. The Subcontract as edited reads: "claims included in subparagraphs (A) or (B), above, shall be arbitrated." (Subcontract Agreement at 7.) A plain reading of this text suggests that these claims must be arbitrated. *See Unistaff, Inc.*, 667 F. Supp. 2d at 619. Defendant argues that a subsequent, edited clause implicitly contradicts this apparent requirement where it states, "If arbitration is the forum **agreed by all parties**, it shall be conducted in Norfolk, Virginia . . . ." (Subcontract Agreement at 7 (crossed off words omitted, handwritten words in bold).) But this provision does not explicitly or necessarily undermine the provision that the matter "shall be arbitrated," rather, it provides for a particular venue—Norfolk, Virginia—in the event the parties both agree to arbitration. Though it seems unusual that the agreement of the parties would be relevant if arbitration is mandatory, a plain reading of the four corners of the Subcontract language, reading its clauses in harmony, indicates that (1) arbitration is mandatory, and (2) if the parties agree to arbitration, the arbitration is to be conducted in Norfolk, Virginia. *See Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013) (citing *Virginian Ry. Co. v. Hood*, 146 S.E. 284, 285 (1929)) ("The various provisions are harmonized, giving effect to each when reasonably possible, and are construed considering the circumstances under which they were executed and the condition of the parties."). However, even if the language is construed as ambiguous, an interpretation favoring compelled arbitration would apply.

"The Supreme Court has announced its 'healthy regard for the federal policy favoring arbitration' and has explained that the Federal Arbitration Act . . . 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

7

arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983)).  Furthermore, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960)); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) ("Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration.").  The Court "may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Am. Recovery Corp*, 96 F.3d at 92 (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83).

Even if the language in the Subcontract is construed as ambiguous, the Court would construe the contract to compel arbitration.  The case law from the Supreme Court and Fourth Circuit dictates that the Court must resolve ambiguities in favor of arbitration.  Because the other *Galloway* factors are met, the Court will compel arbitration under the Federal Arbitration Act.

Additionally, the Federal Arbitration Act "requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements." *Choice Hotels Int'l, Inc.*, 252 F.3d at 709 (citing 9 U.S.C. § 3(1999)).  Both Ballard and Liberty have moved to stay the case. (Mem. Supp. at 8.)  Therefore, the Court will stay the case pending arbitration.

## V. CONCLUSION

For the reasons detailed above, the Court will grant Defendant and Counterclaim Plaintiff S.B. Ballard Construction Company's Motion to Stay and Compel Arbitration (ECF No. 14) and Defendant Liberty Mutual Insurance Company's Motion to Stay Pending Arbitration (ECF No. 16).

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: August 9, 2021